

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

September 26, 1989

Mr. Fred Toler
Executive Director
Texas Commission on Law Enforcement
  Officer Standards and Education
1606 Headway Circle, Suite 100
Austin, Texas 78754

Opinion No. JM-1103

Re: Which state agency is responsible for interpreting the provisions of Insurance Code article 5.33A regarding homeowners premium reductions and related questions (RQ-1758)

Dear Mr. Toler:

You ask two questions about article 5.33A of the Insurance Code.

Article 5.33A provides for reductions in homeowners' insurance premiums. Section 6 of the article provides minimum specifications that the homeowner's property must meet to qualify for the premium reduction. The specifications relate to the types of doors, windows and locks contemplated to increase the security of the property. Section 3 provides that the person seeking the premium reduction shall apply to the city or county where the property is located and that the city or county shall assign an inspector to inspect the property to determine whether it meets the requisite specifications for the premium reduction. Section 7 provides that the Commission on Law Enforcement Officer Standards and Education shall establish standards for the inspection program and certify inspectors. Section 8 provides the requirements for certification as an inspector.

You ask which state agency, the State Board of Insurance (the board) or the Commission on Law Enforcement Officer Standards and Education (the commission), has "primary responsibility" for "interpreting" the provisions of Insurance Code article 5.33A.

Insurance Code article 1.10(1) provides that the board shall "[s]ee that all laws respecting insurance and insurance companies are faithfully executed." Clearly, in order to "see that all laws respecting insurance . . . are

faithfully executed" under article 1.10(1), the board would have to determine what those laws provided for.[1]

Also, we think that the legislature would have contemplated that interpretation of the provisions in question in article 5.33A would be more effectively accomplished by the board than by the commission, given the board's primary concern with insurance matters. Notably, in this respect, a 1985 amendment to article 5.33A, section 6(e), empowered the board to "set standards for alternative specifications to protect a person's property that are at least as effective as those listed in" section 6. Acts 1985, 69th Leg., ch. 744, § 1, at 2568. It would be anomalous, we think, for the legislature to authorize the board to set alternative specifications to those set out in section 6 if it intended that the "primary responsibility" for determining the import of the provisions of section 6 should fall on another agency. See also Ins. Code art. 5.33A, § 5 (board to establish by rule the amount by which premiums may be reduced under the article).

Section 7 of article 5.33A provides for the duties of the commission under the article as follows:

> The commission shall establish standards for the inspection program under this article, shall adopt rules to carry out the inspection program, and shall certify inspectors who do the inspections, except such certificate shall be limited to the specification set forth in Section 6 hereof for which the inspector has received instruction under Section (8)(b)(3) hereof.

We think that the legislature intended in section 7 that the commission's role in implementing article 5.33A be limited to setting standards for the inspection of doors rather than their composition. Inspectors are assigned to inspect the properties of applicants for premium reductions by the city or town where the property is located. Id. § 3. Inspectors must be certified by the commission and in order to receive certification must be peace officers licensed by the commission or building inspectors or other officials

---

1. Of course, under our constitution, the ultimate responsibility for interpreting laws falls, with certain limited exceptions, on the courts. See generally Tex. Const. art. V, § 1, and authorities cited therein.

designated by the city or county where they will serve. They must also have received classroom instruction from the commission or an agent of the commission. Id. § 8. We think that the articles' provisions empower the commission to assure that inspectors are qualified to make _factual_ determinations in accordance with the board's _legal_ interpretations of the article's requirements and to make rules governing the procedures for inspection. We do not think that the commission's duties under the above-mentioned provisions can be said to include the "primary responsibility" for "interpreting" the provisions of article 5.33A, in light of the general provision in article 1.10(1) that the board shall "[s]ee that all laws respecting insurance . . . are faithfully executed."

You also ask whether an exterior door may have glass panels and still qualify under the requirements of article 5.33A for the reduction in homeowners' insurance premiums provided for in the article. Article 5.33A provides in section 6:

> (a)  A person's property qualifies for a homeowners insurance premium reduction if the property meets the following minimum specifications:

> (1)  exterior doors must be solid core doors that are 1 3/8 inches thick and must be secured by dead-bolt locks;

> (2)  metal doors must be secured by dead-bolt locks;

> (3)  double doors must meet the specifications provided by Subdivision (1) of this subsection, must have the inactive door secured by header and threshold bolts that penetrate metal strike plates, and in the case of glass located within 40 inches of header and threshold bolts, must have the bolts flush-mounted in the edge of the door;

> (4)  sliding glass doors must be secured by secondary locking devices to prevent lifting and prying;

> (5)  dutch doors must have concealed flush-bolt locking devices to interlock upper and lower halves and must be secured by a dead-bolt lock;

(6) garage doors must be equipped with key-operated locking devices; and

(7) windows must be secured by auxiliary locking devices.

(b) A dead-bolt lock required by Subsection (a) of this section must lock with a minimum bolt throw of one inch that penetrates a metal strike plate. If a door secured by a dead-bolt lock has breakable glass within 40 inches of the lock, the lock must be key-operated from both sides unless prohibited by life safety codes.

(c) An auxiliary locking device required by Subsection (a) of this section must include screws, wooden dowels, pinning devices, and key-operated locks. In areas in which life safety codes permit, metal bars or grating, if mounted to prevent easy removal, may be substituted for auxiliary locking devices.

(d) Jalousie or louvered windows do not meet the specifications of this section unless they have metal grating mounted as provided by Subsection (c) of this section.

(e) The Board may adopt rules that set standards for alternative specifications to protect a person's property that are at least as effective as those listed in this section. Such alternative specifications shall entitle a person's property meeting such specifications to a similar homeowners premium reduction under this article.

Id. § 6.

The construction of section 6 of article 5.33A presents difficulties. For example, subsection (a)(1) provides that "exterior doors must be solid core doors" of a certain thickness and "secured by dead-bolt locks." Subsections (a)(2) through (a)(6) provide requirements for "metal," "double," "sliding glass," "dutch," and "garage" doors without indicating whether such requirements apply only where the doors in question are exterior doors.

Upon reviewing the provisions in their entirety, we would be inclined to conclude that the requirements of

subsections (a)(2) through (a)(6) for "metal," "double," "sliding glass," "dutch," and "garage" doors apply only where such doors are exterior doors. The requirements for each of such types of door include provisions for locking devices. As a practical matter, we do not think the legislature would have intended such requirements to apply to other than exterior doors. Clearly, the overall purpose of article 5.33A is to allow homeowners' insurance premium discounts to a homeowner for the installation of security equipment that would reduce the risk of forced entry into the house. See Bill Analysis, H.B. 764, 67th Leg. (1981) (adding the article); Bill Analysis, H.B. 1861, 69th Leg. (1985) (amending the article).

Since sliding glass exterior doors might qualify for premium reductions under article 5.33A, section 6(a)(4), if they meet the other requirements of that section, it would seem unlikely that the legislature intended that an exterior door would not qualify if it had glass panels. We also note that the provisions of subsection (b), requiring particular locking devices where "a door secured by a dead-bolt lock has breakable glass within 40 inches of the lock," id. § b, and suggest that an exterior door may have glass panels and still meet the premium reduction requirements.

Also, you inform us that the State Board of Insurance has taken the position that glass in an exterior door does not disqualify a homeowner from receiving an insurance premium reduction. Because the board has factual knowledge of the effectiveness of various security measures in reducing the risks to be insured against, we would be hesitant to challenge their administrative determination. Under such circumstances courts ordinarily defer to the construction of a statute's term by the appropriate administrative agency. See, e.g., Letter Opinion 88-78 (1988) (construction of provisions of article 179d, V.T.C.S. that "fraternal organizations" as defined in that article are eligible for licensure by the comptroller to conduct bingo games).

## S U M M A R Y

Of the two agencies, the State Board of Insurance and the Commission on Law Enforcement Officer Standards and Education, the State Board of Insurance has the "primary responsibility" for "interpreting" the provisions of article 5.33A of the Insurance Code relating to reductions in homeowners' insurance premiums on property meeting

certain security specifications.  An exterior door may have glass panels and still  qualify under the provisions of section 6 of  article 5.33A  if  the  property  meets  the  other specifications provided for in that section.

Very truly yours,

JIM  MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by William Walker
Assistant Attorney General